**FILED**

**June 4, 2015**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 1:00 PM**



## TENNESSEE DIVISION OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Employee: Willis L. Bradshaw | ) | Docket No. 2014-06-0056 |
| | ) | |
| Employer: Jewell Mechanical, LLC | ) | State File No. 79765-2014 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 4th day of June, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **Marshall McClarnon, III** | | | | | X | marshall@poncelaw.com |
| **D. Brett Burrow** | | | | | X | bburrow@bkblaw.com |
| **Pamela B. Johnson, Judge** | | | | | X | Via Electronic Mail |
| **Kenneth M. Switzer, Chief Judge** | | | | | X | Via Electronic Mail |
| **Penny Shrum, Clerk, Court of Workers' Compensation Claims** | | | | | X | Penny.Patterson-Shrum@tn.gov |

Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: Jeanette.Baird@tn.gov



**FILED**

June 4, 2015

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 1:00 PM



# TENNESSEE DIVISION OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Employee: Willis L. Bradshaw | ) | Docket No. 2014-06-0056 |
| | ) | |
| Employer: Jewell Mechanical, LLC | ) | State File No. 79765-2014 |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Pamela B. Johnson, Judge | ) | |

---

### Affirmed and Remanded – Filed June 4, 2015

---

## OPINION AFFIRMING AND REMANDING INTERLOCUTORY ORDER OF COURT OF WORKERS' COMPENSATION CLAIMS

This interlocutory appeal concerns whether the employee suffered a compensable new injury and/or a compensable aggravation of a preexisting condition in his right knee. The trial court ruled for the employer, finding that although the employee stepped from a scissor lift at work and experienced pain and swelling in his right knee, there was insufficient medical evidence that the incident caused either a new injury arising primarily out of and in the course and scope of employment or an aggravation of the employee's preexisting condition arising primarily out of and in the course and scope of employment. The employee has appealed. After a careful review, we find no error. We affirm the trial court's decision and remand the case for any further necessary proceedings.

Judge David F. Hensley delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge Timothy W. Conner, joined.

Marshall McClarnon, III, Goodlettsville, Tennessee, for the employee-appellant, Willis L. Bradshaw

1

D. Brett Burrow, Nashville, Tennessee, for the employer-appellee, Jewell Mechanical, LLC

**Factual and Procedural Background**

Willis Bradshaw ("Employee") installs heating and air conditioning systems for Jewell Mechanical Services, LLC ("Employer"). On January 10, 2014, he stepped from a scissor lift while in the course and scope of his employment, injuring his right knee. The incident was timely reported and workers' compensation benefits were voluntarily provided. Dr. Blake Garside was Employee's authorized treating physician. He performed a right knee arthroscopy with partial medial meniscectomy, debridement of lateral meniscus and ACL reconstruction. Dr. Garside placed Employee at maximum medical improvement on May 13, 2014, and he assigned a 12% permanent medical impairment to Employee's right leg. Employee returned to work without restrictions. The parties reached an agreement resolving Employee's claim for benefits that was approved by the Davidson County Chancery Court on June 25, 2014. In addition to providing indemnity benefits and reconsideration rights, the Agreed Order of Compromise and Settlement provided "statutory future medical treatment" for Employee's right knee injury.

On August 26, 2014, Employee returned to Dr. Garside "with complaints of right knee pain and swelling for 1 week." The report from that visit states that Dr. Garside had not seen Employee since he was placed at maximum medical improvement on May 13, 2014. The report states that Employee "denies any recent injury or trauma," and it notes that Employee's "pain occurred after he got off a scissor lift." Dr. Garside's examination revealed a large effusion and a range of motion "limited by the swelling in [Employee's] knee . . . ." Radiographs were interpreted to reveal "no evidence of acute fractures or dislocations." Dr. Garside aspirated "60 cc of straw-colored fluid," and he injected the knee with Depo-Medrol, Lidocaine and Marcaine. He released Employee to "continue regular duties and activities," noting that he would "see him in the future as needed." A WorkLink Physician's Report completed by Dr. Garside at the August 26, 2014 visit identifies the date of injury as "01/10/2014."

Employee returned to Dr. Garside on September 16, 2014, "with complaints of persistent medial knee pain" that were noted as having "been present since Friday." The report notes that Employee had increasing pain "and he feels as if he has had a recurrence in his swelling." The report notes that Employee "is 7-1/2 months status post right ACL reconstruction and partial meniscectomy." Employee reportedly "did well until three weeks ago when he developed some increasing pain and discomfort after stepping off a scissor lift." Dr. Garside's "PLAN" states that Employee "is having marked mechanical symptoms and recurrent swelling in his right knee." The "PLAN" states that Employee "is concerned about possibility of recurrent meniscal tear versus osteochondral lesion

2

involving his medial femoral condyle." Dr. Garside recommended an MRI "to better evaluate his meniscal and ligamentous structures at the present time and to evaluate his ACL reconstruction." Dr. Garside completed a WorkLink Physician's Report at the September 16, 2014 visit confirming the return to regular duty work and the referral for an MRI. The September 16, 2014 WorkLink Physician's Report also identifies the date of injury as "01/10/2014."

The MRI study was completed on September 22, 2014, and Employee returned to Dr. Garside the following day. The report of the MRI study includes a history of "surgery in early February 2014," and "[s]udden onset of swelling at end of July 2014," noting "[f]luid drained at that time." The findings in the report included the following:

*Ligaments*: The ACL has been reconstructed in the interval since the 01/14/2014 exam. The graft is intact. A ganglion cyst has formed within the distal portion of the graft located within the tibial tunnel. The tunnel has been expanded by the cyst. Intact PCL. Intact collateral ligaments.

*Menisci and Femoral-Tibial Hyaline Cartilage:* The medial meniscus posterior horn and body are diminished in size and truncated from partial meniscectomy performed since the prior exam. No re-tear. Full-thickness hyaline cartilage loss has become more extensive in the weightbearing portions of the medial compartment. Intact lateral meniscus and lateral compartment articular cartilage.

*Patellofemoral Joint and Extensor Mechanism:*
. . . .

*Osseous/Bone Marrow:* Stress reaction edema has developed beneath the medial margin of medial tibial plateau and within the inferomedial portion of the medial femoral condyle.

*General:* Moderate effusion. No loose body or abnormal mass.

Dr. Garside's September 23, 2014 report notes the findings in the MRI report. His examination on that date notes that Employee "remains tender to palpation over the partial medial tibia." The doctor's impression was "1. Right knee chondromalacia [and] 2. Stress injury right medial tibial plateau." The "PLAN" states that Employee "has frequent signs of stress reaction and worsening chondromalacia." Dr. Garside imposed restrictions "at the present time [limited] to no climbing, or squatting." Employee was instructed to return in one month for "re-evaluation for weightbearing and radiographs of the right knee." The WorkLink Physician's Report completed on September 23, 2014 confirms the restrictions and a return appointment scheduled for October 21, 2014. It also identifies the date of injury as "01/10/2014."

Employer filed a Notice of Controversy (Form C-27) with the Division dated October 16, 2014, which identifies the "[m]atters in dispute" as follows: "Injury by accident vs. continuation of covered prior claim of 01/10/2014 for same knee which indemnity was settled and medicals left open for continued treatment."

Employee returned to Dr. Garside on October 21, 2014. The report states that Employee "returns today in followup of right tibial stress fracture," and it notes that "[h]e is much improved since he was last seen." Employee reported a decrease in pain and discomfort, and the report states "[h]e is actually pain free at the present time." The report references the recent MRI study, "which revealed stress reaction in the medial compartment as well as progressive chondromalacia." Radiographs were obtained, but "[t]here are no acute fractures noted." Employee was allowed to resume activities "to tolerance," and he was "released to return to regular duties and activities." As with the prior appointments, a WorkLink Physician's Report identifies the date of injury as "01/10/2014." No reports of office visits with Dr. Garside and no WorkLink Physician's Reports for dates subsequent to October 21, 2014 were admitted into evidence at the expedited hearing.

Employee filed a Petition for Benefit Determination on November 6, 2014, seeking temporary disability benefits. Mediation was not successful in resolving the parties' disputes, and on March 11, 2015, Employee filed a Request for Expedited Hearing, asking the trial court to find that a "new injury" occurred on August 11, 2014, and to award Employee temporary disability benefits for the period from September 23, 2014, through October 21, 2014. Counsel for the parties participated in the expedited hearing by telephone on April 14, 2015.

Exhibits introduced into evidence at the expedited hearing included two affidavits, one from Employee and the second from Employer's General Manager. No one testified at the hearing. Employee's affidavit states that on August 11, 2014, he "stepped off a scissor lift and had the immediate onset of pain in my right knee." The affidavit states, "I reported this new incident to my employer. At the time, I thought that I may have aggravated my January 10, 2014 injury, and I returned to Dr. Blake Garside for evaluation of my knee." The affidavit includes statements concerning what Dr. Garside told Employee about his January 10, 2014 injury being aggravated and about Employee having "a new stress fracture to the tibial plateau." The affidavit says that "Dr. Garside indicated to me that this was a new injury and not related to my prior injury and surgery," and that "[o]nce Dr. Garside informed me that this was a new injury, and not an aggravation of my previous injury, I notified my employer that this was a new workers' compensation injury."

The affidavit of Employer's General Manager, Donna Biter, states that she worked for Employer in the summer of 2014 and up through the November 24, 2014 date that her

4

affidavit was signed. It states that she "communicated with [Employee] pertaining to his leg and how it impacted him on his job," and that while she did not know the date that Employee settled his claim arising out of the January 14, 2014 work injury, "during the summer of 2014 and up until the time of this new asserted injury on August 11, 2014, [Employee] regularly had problems with the knee which is the subject of this claim during that timeframe." The affidavit states that Ms. Biter was aware that Employee saw Dr. Garside in the latter part of August 2014, but "[a]t or about that time I was not advised [Employee] sustained or claimed a new injury to his knee." The affidavit states that Ms. Biter was not aware that Employee saw Dr. Garside again on Tuesday September 23, 2014, and that Employee worked the remainder of that week "at full duty." The following statements in the affidavit address Ms. Biter's discussions with Employee concerning when his alleged new injury occurred:

> On Monday morning, September 29, 2014, I received a slip from Tennessee Orthopaedic Alliance referencing Mr. Bradshaw being requested to work modified duty which would involve no climbing and no squatting. It was at this time I called Mr. Bradshaw while he was on a jobsite working full duty and sent him home per his work restrictions. From his home over the telephone, he advised he was on a particular jobsite, but did not recall the date. He said he was walking across the floor when he felt tightness in his knee. He went to the bathroom and his knee was swollen. He provided me two potential dates that the alleged injury could have occurred. When I looked up his timesheet for the jobsite identified by Mr. Bradshaw, he was not on that site on the dates provided. I went back to him and again he was not sure when it had happened.

> In discussing this further, I went over Mr. Bradshaw's timesheets with him over the telephone. He then picked a date at the jobsite where he thought the alleged incident could have occurred. He finally indicated it occurred on a Monday. He had been hanging ductwork on a lift, lowered the lift, got off the lift, started walking and at the time he was walking across the floor he felt tightness in the knee, and the knee became swollen.

On May 6, 2015, the trial court entered an Expedited Hearing Order "holding that [Employee] is not entitled to temporary disability or medical benefits." Employee timely filed an Expedited Hearing Notice of Appeal on May 11, 2015. No transcript of the proceedings or statement of evidence was filed. On May 27, 2015 the appeal was submitted to the Workers' Compensation Appeals Board.

### Standard of Review

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a

presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The limited circumstances warranting reversal or modification of a trial court's decision are detailed in the statute:

> The workers' compensation appeals board may reverse or modify and remand the decision of the workers' compensation judge if the rights of any party have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:
>
> (A) Violate constitutional or statutory provisions;
> (B) Exceed the statutory authority of the workers' compensation judge;
> (C) Do not comply with lawful procedure;
> (D) Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or
> (E) Are not supported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 50-6-217(a)(3) (2015).

In applying the standard set forth in subparagraph (E) above, courts have construed "substantial and material" evidence to mean "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Clay County Manor, Inc. v. State, Dep't of Health & Env't,* 849 S.W.2d 755, 759 (Tenn. 1993) (quoting *Southern Ry. Co. v. State Bd. of Equalization,* 682 S.W.2d 196, 199 (Tenn. 1984)). Like other courts applying the standard embodied in section 50-6-217(a)(3) (2015), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

**Analysis**

Tennessee Code Annotated section 50-6-239(d)(1) (2014) establishes a different standard of proof for the issuance of interlocutory orders at expedited hearings than the standard of proof required at compensation hearings. An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, slip op. at 4, 5 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

To be compensable under the workers' compensation statutes, an injury must arise "primarily out of and in the course and scope of employment . . . ." Tenn. Code Ann. §

6

50-6-102(13) (2014). An injury means "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence, and shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(13)(A) (2014). "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B) (2014). "An injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(13)(C) (2014). "The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(13)(E) (2014).

Furthermore, an employer takes an employee "as is" and assumes the responsibility of the employee having a preexisting condition aggravated by a work-related injury that might not affect an otherwise healthy person. *Hill v. Eagle Bend Mfg. Inc.,* 942 S.W.2d 483, 488 (Tenn. 1997). An employer is "liable for disability resulting from injuries sustained by an employee arising out of and in the course of his employment even though it aggravates a previous condition with resulting disability far greater than otherwise would have been the case." *Baxter v. Smith,* 364 S.W.2d 936, 942-43 (Tenn. 1962). In *Trosper v. Armstrong Wood Products, Inc.,* 273 S.W.3d 598 (Tenn. 2008), the Tennessee Supreme Court discussed previous cases concerning the rule that an employer bears the risk of aggravation of an employee's preexisting condition. Noting disparate results under similar circumstances in earlier cases, the court "resolved to provide some clarity for the trial courts." *Id.* at 607. Citing the court's holding in *Smith v. Smith's Transfer Corp.,* 735 S.W.2d 221 (Tenn. 1987), as providing "the proper framework where an employee seeks compensation on the grounds that a work injury has aggravated a pre-existing injury or condition," the Tennessee Supreme Court reiterated "that the employee does not suffer a compensable injury where the work activity aggravates the pre-existing condition merely by increasing the pain." *Id.* at 607. The court continued, "[h]owever, if the work injury advances the severity of the pre-existing condition, or if, as a result of the pre-existing condition, the employee suffers a new, distinct injury other than increased pain, then the work injury is compensable." *Id. See also Poindexter v. Roadway Express,* No. W2013-01968-SC-WCM-WC, 2014 Tenn. LEXIS 695, at *8-9 (Tenn. Workers' Comp. Panel Sept. 29, 2014). *But see Foreman v. Automatic Sys.,* 272 S.W.3d 560, 576 (Tenn. 2008) (where employee's work injury only

7

temporarily aggravated her preexisting condition, the surgery performed to address the preexisting condition was not causally related to the work injury).

In this appeal, Employee contends he "provided sufficient evidence to establish an injury within the meaning of the workers' compensation statute," and Employee asserts that he "should be awarded temporary disability benefits." The trial court found that Employee "stepped from a scissor lift on or about August 11, 2014, and experienced pain and swelling in his right knee." The trial court also found that "[u]pon learning that the symptoms arising from the August, 2014 work incident possibly resulted in a 'new' injury, [Employee] timely reported the August, 2014 work incident to [Employer]." Finding that Employee "identified a specific incident, identifiable by time and place" that occurred while he performed his job duties as required by section 50-6-102(13) (2014) for an injury to be accidental, the trial court then addressed whether there was evidence "shown by a reasonable degree of medical certainty" that the August 2014 incident was either a new injury arising primarily out of and in the course and scope of employment or an aggravation of a preexisting condition arising primarily out of and in the course and scope of employment.

Employee emphasizes in his position statement the trial court's finding that the September 22, 2014 MRI study "suggests a 'new, distinct' stress reaction, not previously identified on the diagnostic testing . . . ." Employee asserts the "Defendant in this case has not made any allegations that the tibial stress *fracture* reported by [Employee] did not arise primarily from his work activities." (Emphasis added). While Employee is not burdened at the expedited hearing with "proving each and every element of the claim by a preponderance of the evidence," *McCord v. Advantage Human Resourcing*, No. 2014-006-0063, slip op. at 4, 5 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015), Employee is burdened with presenting sufficient evidence from which the trial court may determine "that the injured employee would likely prevail at a hearing on the merits." Tenn. Code Ann. § 50-6-239(d)(1) (2014). Contrary to Employee's assertion, under these circumstances Employer has no burden of proof with respect to the issue of medical causation.

Dr. Garside's October 21, 2014 report states that Employee "returns today in followup of his right tibial stress fracture;" however, the September 22, 2014 MRI report identifies "[s]tress reaction edema" and not a stress fracture. Dr. Garside addressed the stress injury in the September 23, 2014 report as "some associated development of stress reaction and bone marrow edema." The "IMPRESSION" included in Dr. Garside's September 23, 2014 report includes "[s]tress injury right medial tibial plateau," and the "PLAN" states that Employee "has frequent signs of stress reaction and worsening chondromalacia," but the medical records do not otherwise indicate or suggest that Employee sustained an acute stress "fracture" of the medial tibial plateau. More importantly, none of the medical records address the cause of the stress reaction/injury or the worsening chondromalacia. These conditions could be the natural progression of the

8

January 2014 injury and unrelated to the alleged August 2014 incident. It is Employee's burden to prove through appropriate expert medical opinions that these conditions were caused by the alleged work injury or that the alleged work injury advanced the severity of these conditions. To date, Employee has not met this burden.

Although noting that the September 22, 2014 MRI study "suggests a 'new, distinct' stress reaction, not previously identified," the trial court found that Employee "failed to demonstrate that the August 11, 2014 work incident caused a 'new and distinct' injury or 'advanced the severity' of the pre-existing right knee injury." Having failed to present sufficient evidence to demonstrate a new injury or an injury that advanced the severity of Employee's preexisting condition caused by the August 11, 2014 incident, the trial court concluded that Employee "is not likely to prevail at a hearing on the merits." The medical records and affidavits introduced at the expedited hearing support the trial court's findings and conclusions, and we cannot say that the trial court erred in determining that Employee is not likely to prevail at a hearing on the merits.

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's conclusion that Employee failed to demonstrate that the August 11, 2014 work incident caused a new and distinct injury or advanced the severity of the preexisting right knee injury. Thus, the trial court did not err in denying the requested disability benefits and the medical benefits related to the alleged August 2014 injury.[1] Additionally, we find that the trial court's decision does not violate any of the standards identified in Tennessee Code Annotated section 50-6-217(a)(3) (2015). Accordingly, the trial court's decision is affirmed and the case is remanded for any further proceedings that may be necessary.

David F. Hensley, Judge
Workers' Compensation Appeals Board

---

[1] Neither the decision of the trial court nor this opinion affects Employee's right to the medical benefits provided in the June 25, 2014 court-approved Agreed Order of Compromise and Settlement.